IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM PENDLETON, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 06-14 GMS |
| ) | |
| ) | |
| JO ANNE B. BARNHART, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. | |

## MEMORANDUM

**I.  INTRODUCTION**

This case comes from the denial of William Pendleton's ("Pendleton") claim for Social Security disability benefits. On November 25, 2002, Pendleton applied for Disability Insurance Benefits ("DIB").[1] (Tr. at 16.) His claim was first denied on August 6, 2003. (D.I. 9-2 at 1.) On September 12, 2003, Pendleton requested that the claim be reconsidered. (Id.) On October 24, 2003, his claim was again denied. (Id.) Following this denial, Pendleton requested a hearing to review this finding. (Id. at 1-2.) The request was granted, and on December 1, 2004, the Administrative Law Judge (the "ALJ") held a hearing to determine Pendleton's eligibility. (Id. at 2.) Following the hearing, on March 15, 2005, the ALJ issued a written opinion denying Pendleton's claim for DIB. (Tr. at 17.) The ALJ found that Pendleton was not disabled within the meaning of the Social Security Act (the "Act"). (Id.) Pendleton subsequently requested a review of the ALJ's decision by the Appeals Council. (D.I. 9-2 at 2.) On June 17, 2005, the Appeals

---

[1] Pendleton had previously filed an application for disability benefits alleging disability as of September 16, 1996 due to a cardiac impairment. (Tr. at 16.) His application at issue in the case before the court involves the same impairment and same period. (Id.) The doctrine of *res judicata* does not apply, however, because Pendleton submitted new evidence in connection with the application at issue.

Council approved the ALJ's decision. (Id.)

Following the Appeals Council's review of the ALJ's decision, Pendleton filed an appeal with this court, on January 6, 2006. (D.I. 1.) Currently before the court are both parties' motions for summary judgment. Because the court finds that the ALJ's decision is supported by substantial evidence, it will deny the plaintiff's motion and grant the defendant's motion.

## II. BACKGROUND

Pendleton was born on September 16, 1956 and has a high school education. (D.I. 9-2 at 3.) His past work experience includes employment as an overhead crane operator, a delivery truck driver, and a laborer. (Id. at 3.) Pendleton's right leg was injured by a trash truck sometime in 1996. (Tr. at 19.) He stopped working on September 16, 1996, because of his alleged pain and difficulty breathing and walking from constant pain in his chest, hypertensive heart disease, and problems with his right knee. (D.I. 9-2 at 3-5.) Since then, Pendleton has had eight or nine surgeries on his right knee and uses a walking cane. (Id. at 5.) He claims that he is unable to work because he cannot walk far or lift over twenty-five pounds without getting dizzy, fainting, or experiencing shortness of breath. (Id. at 4.)

### A. Medical Evidence

Between the time of his accident and the time of the ALJ's decision, Pendleton was admitted to the Perry Point VA Medical Center (the "VAMC") at least twice and was discharged with a diagnosis of pericardial effusion,[2] episodes of dysphagia,[3] and anemia of unknown etiology. (Id. at

---

[2] Pericardial effusion is the accumulation of an abnormally large amount of pericardial fluid in the pericardium. (D.I. 9-2 at 8 n.4.)

[3] Dysphagia is defined as difficulty in swallowing. (Id. at n.5.)

7-8.) In addition, at least five medical professionals examined Pendleton. (Id. at 9-15.) Dr. Marie A. Margiotti ("Dr. Margiotti") treated Pendleton after his accident, during the period of September 16, 1996 to January 21, 1998. (Id. at 11.) Dr. Margiotti recommended treatment that included moist heat, exercises, and Ibuprofen. (Id.) An MRI revealed a tear of the posterior horn of the medial meniscus, thinning of the articular cartilage, and small right knee joint effusion. (Id.) On February 11, 1997, Pendleton underwent arthroscopic surgery on his right knee. (Id.) Dr. Margiotti's notes indicated that Pendleton's right knee pain continued following the surgery. (Id.)

Dr. Michael Mattern ("Dr. Mattern") examined Pendleton during the period from June 17, 1997 to October 20, 1998. (Id.) Dr. Mattern indicated that Pendleton experienced a drainage problem with his knee following surgery, which delayed physical therapy. (Id.) Medical notes from Pendleton's physical therapy sessions at the Easter Seal Rehabilitation Center, from February 27, 1997 to September 25, 1997, reflect that physical therapy did not improve his symptoms. (Id. at 11-12.) In response to Pendleton's insistence that his knee pain persisted and, therefore, he was not a suitable candidate for physical therapy, Dr. Mattern allowed Pendleton additional time to heal and prescribed Pendleton Ultram to help with his pain. (Id. at 12.)

On January 21, 1998, Dr. Mattern indicated that Pendleton could not lift more than ten pounds, stand for longer than one hour, or walk for more than thirty minutes. (Id. at 13.) Several months later, on April 15, 1998, Dr. Mattern prescribed Pendleton a cartilage brace for his knee. (Id.) In July 1998, Pendleton continued to complain about his knee popping at "almost every step." (Id.) Dr. Mattern noted quadriceps atrophy and diagnosed Pendleton with anterior instability, right knee, and secondary to anterior cruciate ligament deficiency, which appeared to be a result of Pendleton's accident. (Id.) Dr. Mattern recommended that Pendleton undergo additional surgery involving ACL

reconstruction. (Id.)

On November 29, 2000, Pendleton consulted with Dr. Irwin Lifrak. (Id. at 9.) During the medical examination, Pendleton reported that his knee pain was "severe" and that he used a cane to ambulate. (Id.) In November of 2002, a report from the VAMC noted that Pendleton had "poor functional capacity." (Id. at 10.) Also in 2002, Pendleton reported that his pain level was never less than six out of ten, and was occasionally as great as ten out of ten. (Id.) In 2004, Pendleton's primary care physician, Dr. Aleva Hernandez, determined that Pendleton's knee problems would have prevented him from working, and observed that Pendleton experienced fatigue every afternoon, a side effect of the medication, Percocet, that Pendleton took for his heart pain. (Id. at 14-15.)

### B.  Hearing Testimony

At the hearing before the ALJ, Pendleton testified that as a result of the accident in 1996, he suffers from chest pain and shortness of breath, and has difficulty walking or sitting for long periods of time. (Tr. at 19.) A vocational expert (the "VE") testified that there were jobs that individuals with Pendleton's residual functional capacity could perform. (Id. at 21.) The VE further testified that Pendleton could work as an "assembler of which there existed 300 jobs in the Delaware area and 9,500 jobs in the national economy," or as a "charge account clerk, of which there existed 50 to 100 jobs in the Delaware economy and 20,000 in the national economy," or as a cashier, of which there existed "1,000 jobs in the Delaware economy and 300,000 jobs in the national economy." (Id.)

### C.  The ALJ's Findings

Based on the medical evidence and the testimony of the VE and other witnesses, the ALJ determined that Pendleton was not disabled within the meaning of the Act. (Tr. at 17.) The ALJ found that the medical evidence indicated that, during the period at issue, Pendleton had

4

"degenerative joint disease" in his right knee and "hypertensive coronary vascular disease." (Id. at 18.) The ALJ determined that while these impairments were "severe" within the meaning of the Social Security Regulations, they were not "severe" enough to medically equal, either alone or in combination, one of the specific impairments listed in Appendix 1, Subpart P, Regulations No. 4. (Id.) The ALJ noted that a July 1998 physical exam revealed that Pendleton had full range of motion, no effusion, and no atrophy in the right quadriceps. (Id.) Furthermore, Pendleton's treating physician found that he could perform light duty work. (Id.) Other medical consultants who reviewed the evidence found that Pendleton had class I-II heart disease, a "minimal cardiac limitation." (Id.) Although Pendleton also had high blood pressure, he controlled it with medication. (Id.)

The ALJ further noted that Pendleton's claims regarding his medical limitations were "not totally credible." (Id. at 22.) The ALJ found that Pendleton did not have atrophy or weakness in his knee, as might be expected if Pendleton were as physically limited as he claimed. (Id. at 19.) Further, the ALJ noted that Pendleton's complaint that he needed to rest during the day was unsupported by the evidence, because Pendleton cares for himself "without difficulty and even engages in hobbies." (Id.) Therefore, the ALJ determined that Pendleton's subjective complaints were only partially credible. (Id.) Based upon the evidence, the ALJ determined that Pendleton was capable of successfully adjusting to work that existed in large numbers in the national economy. (Id. at 21.)

## III. STANDARD OF REVIEW

### A. Motion for Summary Judgment

Both parties filed motions for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). In determining the appropriateness of summary judgment, the court must "review the record as a whole, 'draw[ing] all reasonable inferences in favor of the non-moving party[,]' but [refrain from]

weighing the evidence or making credibility determinations. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (citation omitted). If the court is able to determine that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, summary judgment is appropriate. *Hill v. City of Scranton*, 411 F.3d 118, 25 (3d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)).

### B. Review of ALJ's Findings

The court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." See 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence does not mean a large or a considerable amount of evidence. *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938)). Rather, it has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala*, 55 F.3d 900, 901 (3d Cir. 1995) (quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)).

Credibility determinations are the province of the ALJ, and should only be disturbed on review if not supported by substantial evidence. *Pysher v. Apfel*, Civ. A. No. 00-1309, 2001 WL 793305, at *2 (E.D. Pa. July 11, 2001) (citing *Van Horn v. Schweiker*, 717 F.2d 871, 973 (3d Cir. 1983)). Thus, the inquiry is not whether the court would have made the same determination, but rather, whether the Commissioner's conclusion was reasonable. *See Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). In social security cases, this substantial evidence standard applies to motions for summary judgment brought pursuant to Fed. R. Civ. P. 56(c). *See Woody v. Sec. of the Dep't of Health & Human Serv.*, 859 F.2d 1156, 1159 (3d Cir. 1988).

**IV.     DISCUSSION**

The crux of Pendleton's attack on the ALJ's decision is that the ALJ failed to give proper weight to some evidence, and placed too much weight on other evidence. (See D.I. 9-2 at 17-18.) Specifically, Pendleton argues that the ALJ failed to consider §1.02 and §4.02 in the Listing of Impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. (Id. at 18.)[4] On the contrary, while the ALJ may not have expressly mentioned these listings in reaching her decision, the ALJ did consider Pendleton's symptoms that would fall within these listings. (Tr. at 18.) There is considerable evidence in the record indicating that Pendleton did not suffer from the impairments listed in §1.02 and §4.02. After examining the evidence concerning Pendleton's claims of cardiac impairment, the ALJ determined that Pendleton's cardiac impairment was only a class I-II condition, and that Pendleton suffered from a "minimal cardiac limitation." (Id. at 18.) Furthermore, the ALJ considered the evidence relating to Pendleton's degenerative joint disease in his right knee and his hypertensive coronary vascular disease. (Id. at 17-19.) Though finding that these ailments were "severe" within the meaning of 20 C.F.R. 404.1520(c), the ALJ reasonably concluded that these impairments did not meet one of the listed impairments.

Pendleton also argues that the ALJ failed to properly evaluate his pain. (D.I. 9-2 at 23.) This argument lacks merit. The record shows that the ALJ considered whether the medical evidence demonstrated the existence of a medical impairment that could cause the pain alleged. (Tr. at 18-19.) As noted above, the ALJ found that Pendleton lacked the amount of atrophy or weakness in his knee that one would expect for someone as physically limited as Pendleton claimed. (Id. at 19.) The ALJ

---

[4] Listing §1.02 discusses "major dysfunction of a joint." (D.I. 9-2 at 19.) Listing § 4.02 covers chronic heart failure. (Id. at 20.)

pointed to medical evidence that Pendleton had full range of motion and no atrophy in his knee, and that Pendleton's pain was "tolerable" with medication. (Id.) The ALJ noted in addition that Pendleton is able to cook, perform housework, and work on cars. (Id.) Credibility determinations are the province of the ALJ, and there is more than sufficient evidence to support the ALJ's finding that Pendleton's subjective complaints of pain were only partially credible.

Pendleton further argues that the ALJ erred by failing to consider that he was awarded a disability rating of 60% by the Veterans Administration. (D.I. 9-2 at 31.) This argument also lacks merit. As acknowledged by Pendleton, a determination of disability by another agency is not binding on the Commissioner. (Id.) In sum, this court finds that there is considerable evidence in the record indicating that Pendleton is not entitled to a period of disability and DIB under Sections 216(I) and 223 of the Act. Accordingly, the court is not persuaded that it should disturb the ALJ's finding that Pendleton retains the residual functional capacity to successfully perform work that is available in significant numbers in the economy. (Tr. at 21.) For these reasons, the court will uphold the ALJ's decision and grant the defendant's motion for summary judgment.

Dated: March 20, 2008          /s/ Gregory M. Sleet
                               CHIEF, UNITED STATES DISTRICT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM PENDLETON, JR., )<br>)<br>Plaintiff, )<br>v. )<br>)<br>JO ANNE B. BARNHART, )<br>Commissioner of Social Security, )<br>)<br>Defendant. | Civil Action No. 06-14 GMS |

## **ORDER**

For the reasons stated in the court's memorandum of this same date, IT IS HEREBY ORDERED that:

1. The plaintiff's motion for summary judgment (D.I. 9) is DENIED.

2. The defendant's motion for summary judgment (D.I. 10) is GRANTED.

3. The Clerk of Court is directed to close this case.


Dated: March 20, 2008          /s/ Gregory M. Sleet
                               CHIEF, UNITED STATES DISTRICT JUDGE